HYRAM H. LODGE and GEORGE L. PEDRICK *v.* a certain
   paper writing purporting to be the last will and testa-
   ment of SAMUEL LODGE, deceased.

Testamentary witnesses, physicians and experts are always allowed to tes-
   tify as to their opinions in reference to the mental capacity of the testator
   to make a will, without stating the particular grounds on which they have
   formed them ; but other witnesses are not.
It is incumbent upon the person seeking to establish the will to prove all
   the formal requisites of it to the satisfaction of the jury on an issue of
   *devisavit vel non ;* and if the jury are satisfied from the evidence that the
   testator signed the paper writing knowing it to be his will, and the wit-
   nesses attested and subscribed the same in his presence, the will was duly
   executed and must be recognized to be a valid will, unless he was mental-
   ly incapable of making a will, or unless undue influence was exerted over
   his mind to such an extent as to procure a disposition of his property to
   be made contrary to his real wishes ; and these are purely questions of
   fact for the jury to decide under the instructions of the court in relation
   to the rules of law applicable to them.
Every person is presumed in law to be of sound mind until the contrary is
   shown, and the burden of showing an unsound mind in the testator,
   rests on the party contesting the validity of the will, and the testimony
   on this point must relate to the time of its execution.
Mere weakness of mind, or partial imbecility from disease of the body, or
   from age, will not render a person incapable of making a will.   A weak,
   or feeble minded person may make a valid will, provided he has under-
   standing and memory sufficient to enable him to know what he is about
   and to whom he is disposing of his property.   If therefore the testator

at the time of executing the will, was capable of exercising thought, reflection and judgment, knew what he was doing and how he was disposing of his property, and had sufficient memory and understanding to comprehend the nature and character of the transaction, he is capable of making a will; otherwise, not.

Undue influence must be such an influence exerted over the testator's mind as to take away or destroy for the time his own free will; and must be such an influence obtained either by flattery, excessive importunity, or threats, or in some other mode, by which such a dominion is acquired over the will of the testator as to overbear and destroy his free agency and constrain him to do against his free will, what he is unable to refuse. But that influence which is acquired by modest persuasion, or by arguments addressed to the understanding, or by mere appeals made to the affections of the testator, does not amount in contemplation of law to undue influence, or such influence as will invalidate a will.

THIS was an issue of *devisavit vel non* awarded by the Register of Wills in New Castle County, on a caveat thereto by the plaintiffs, to try the question whether a certain paper purporting to be the last will and testament of Samuel Lodge, deceased, was or was not his last will and testament. The only question of fact involved in it was as to the mental condition and capacity of the deceased to make a valid will at the time it was made by him, and upon which several witnesses were examined on each side, whose testimony in the main, was both pointed and conflicting, as to the extreme feebleness of his mind as alleged on the one side, and the soundness of it as alleged on the other. In addition to which undue influence was imputed to the principal devisee in the making of it, but little or no testimony was adduced to support the imputation.

On the former point Clark Webster, a witness, testified that he thought in the latter part of his life Samuel Lodge was a good deal altered in his mind. In April 1856, he went down with his son Hyram to his house who paid him twenty-five hundred dollars and when it was paid down on the table, he took no more notice of it than if it had been brown paper. He was down there on another occasion with his son Hyram who went down to pay him interest on a debt he owed him, and after he had paid it,

the witness asked the old man if he wanted the principal, to which he answered "oh no," he did not "want the principal," and in about three months afterward he executed him for it, and he was put to a great deal of trouble to raise it for him at that time.  The amount of the debt was five thousand dollars.  The witness was then asked the question what was the impression at that time made on his mind by the facts and circumstances which had been stated by him as to the state and condition of the old man's mind and his capacity to make a will.

*D. M. Bates*, for the executor, objected that the opinion of the witness could not be admitted as evidence in the case.  He understood the rule to be that a testamentary witness might give his opinion on such point in evidence, but no other witness such as this was, and who was not a witness to the execution of the instrument in question, could be allowed to express his opinion on the point involved, or on any other matter and make it evidence.

*Gordon*, for the caveators : The rule was as stated on the other side, but he understood it to go further, and that other than testamentary witnesses may testify as to the state and soundness, or unsoundness and debility of the testator's mind, his appearance, acts and conversation and any particular facts or circumstances, from which they inferred and others might infer the state and condition of his mind, but they could not state their opinion merely as to the soundness, or unsoundness of it, without at the same time stating the facts from which they drew their inference and conclusion in regard to it; and he so understood it to have been ruled in this court in the case of *Duffield v. Morris' Executor*, 2 *Harr.* 385.

*By the Court:* The general principle is familiar and well settled.  In the case referred to and in several American cases, the principle has been ruled to the extent which has been stated; and as that case was well considered in

this court, we shall follow it.  Testamentary witnesses, practitioners of the medical profession and experts are always allowed to testify as to their opinions on that point and the conclusions to which they had arrived in reference to the testator's mental capacity to make a will without stating the particular grounds on which they have formed them.  But other witnesses can only be permitted to speak of their opinions, after stating the particular facts, circumstances and appearances on which they base them, as to the mind of the deceased, for the jury after all are to judge of the weight and worth of the opinion, and for that reason they ought to know the grounds on which it was founded.

The witness then stated that upon the facts detailed by him, he did not think that Samuel Lodge was at that time fit to attend to business, or to make a will.

After closing the testimony the counsel submitted the case without argument to the jury, subject to the opinion of the court on points stated by them and embraced in the charge to the jury.

*The Court, Gilpin C. J.*, charged the jury:  A last will and testament to be valid, (except a nuncupative will,) must be in writing and signed by the testator, or by some person subscribing his name in his presence, and by his express direction, and attested and subscribed in the testator's presence by two or more credible witnesses. Signing therefore by the testator is made by our statute, essential to the validity of a will—but it is not necessary that the attesting witnesses should see him sign it.

Formerly, it was considered, that although it was not necessary the witnesses should see the testator sign, yet it was considered that some formal acknowledgment of the signature, or of the will, by the testator, before or to the witnesses, was necessary.  But all doubt upon this question has at length been removed, by a number of recent well considered adjudications.  And it is now well settled that no formal acknowledgment of the signing, or

recognition of, or allusion to the testamentary act, is necessary to the validity of a will. Indeed, the testator need not utter a word about it, or in any other way disclose the nature of the instrument. Where a testator has previously signed his will, knowing it to be such, and either by himself or through another person, directly or impliedly, requests the witnesses to subscribe the memorandum of attestation, and they do so in his presence, this is a valid execution of the will, although they neither saw his signature, nor were made acquainted with the nature of the instrument they attested. And this is so, because the circumstances attending the transaction, are equivalent to an express acknowledgment.

The testator must at the time of the signing of the will be conscious that the paper which he signed, and which was attested in his presence was his will. But, as I have already intimated, no formal acknowledgment of his signature or of the will, as such, by words or express declaration, is necessary to be made by the testator to the witnesses. The acts and conduct of the testator, at the time, in respect to the business then being transacted, may be as significant as words, and may amount to an acknowledgment in fact, though no formal words were uttered.

The first question for you to decide according to the evidence, is, whether the signature to the paper writing alleged to be his will, was signed by Samuel Lodge, the testator. The second question is, whether Wm. P. Lodge and Wm. Phillips subscribed their names as attesting witnesses to it in his presence. It is incumbent on the person seeking to establish the will, that is the executor, to prove these facts to the satisfaction of the jury. If the jury are satisfied from the evidence, that the testator signed the paper writing, knowing it to be his will, and the witnesses attested and subscribed the same in his presence, the will was duly executed and must be considered to be a valid will, unless he was mentally incapable of making a will, or unless undue influence was exerted over his mind to such an extent as to procure a

disposition of his property to be made, contrary to his real wishes. These are purely questions of fact for the jury to decide under the instructions of the court in relation to the rules of law applicable to them. The state or condition of a person's mind is a fact to be proved like any other fact in the case, and in order to ascertain the truth of this, evidence is admissible to show the state of his mind, both before and after the act which is the subject of controversy.

After formal proof of the execution of the will has been made, its validity may be contested and its establishment resisted on the ground of want of capacity, or, in other and more appropriate words—on the ground, that the testator at the time he made his will, was not of sound and disposing mind and memory, or that the will was procured by what is called undue influence.

As regards the question of want of capacity or unsoundness of mind, it is proper to remark that it is a rule of law that every person is presumed to be of sound mind, until the contrary be shown, and that the burden of showing unsoundness of mind in the testator, rests on the party impeaching or contesting the validity of the will, and the evidence on this point, must relate to the time of its execution.

Mere weakness of mind, or partial imbecility from disease of body, or from age, will not render a person incapable of making a will. A weak or feeble-minded person may make a valid will, provided he has understanding and memory sufficient to enable him to know what he is about, and how, or to whom, he is disposing of his property.

The question therefore, for the jury to consider in respect to this point is, whether the testator, at the time he executed the will, was capable of exercising thought, reflection, and judgment,—whether he knew what he was doing, and how he was disposing of his property. If the jury are satisfied from the evidence, that he had sufficient memory and understanding to comprehend the nature and character of the transaction, it will be their duty

to consider him capable of making a valid will,—otherwise, not.

As to the question of undue influence, we say to you, that it must be such an influence exerted over the testator's mind as to take away or destroy for the time his own free will; it must be such an influence obtained either by flattery, excessive importunity, or threats, or in some other mode by which such a dominion is acquired over the will of the testator, as to overbear and destroy his free agency, and constrain him to do, against his free will, what he is unable to refuse. But that influence which is acquired by modest persuasion, or by arguments addressed to the understanding, or by mere appeals made to the affections of the testator, does not amount in legal contemplation to undue influence, or such influence as invalidates a will.

In determining this question the jury will take into consideration the age of the testator, the state of his mind, the relation of the parties to each other, his affections and preferences, and indeed, all other circumstances disclosed by the evidence, calculated to enlighten their consciences on this point.

Finally, if the jury believe from the evidence that the testator signed the paper writing in question, as his will, or knowing it to be such, and that William P. Lodge and William Phillips attested and subscribed the same as witnesses in his presence, and that at the time of so signing, he had sufficient memory and understanding to know, and did know what he was doing, and what disposition he was making of his property, and was not constrained by undue influence to do so, against his free will—then it will be your duty to find that the paper writing propounded as his will, is his last will and testament—otherwise, you will find that it is not his last will and testament.

In considering the evidence and on deciding these questions the jury will bear in mind and apply to the facts proved before them, the rules of law which I have thus briefly stated for your guidance.